IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BONUTTI SKELETAL INNOVATIONS, L.L.C., ) ) Plaintiff, ) ) v. ) ) ZIMMER HOLDINGS, INC. and ZIMMER, INC., ) ) Defendants. ) | C.A. No. 12-cv-1107 (GMS) |
| BONUTTI SKELETAL INNOVATIONS, L.L.C., ) ) Plaintiff, ) ) v. ) ) CONFORMIS, INC., ) ) Defendant. ) | C.A. No. 12-cv-1109 (GMS) |
| BONUTTI SKELETAL INNOVATIONS, L.L.C., ) ) Plaintiff, ) ) v. ) ) WRIGHT MEDICAL GROUP, INC. and WRIGHT MEDICAL TECHNOLOGY, INC., ) ) Defendants. ) | C.A. No. 12-cv-1110 (GMS) |

## MEMORANDUM

### I. INTRODUCTION

On September 10, 2012, the plaintiff, Bonutti Skeletal Innovations LLC ("Bonutti"), filed suit against Zimmer, Inc. and Zimmer Holdings, Inc. (collectively "Zimmer"), (D.I. 1, D.I. 10 in 12-1107), ConforMIS, Inc. ("ConforMIS"), (D.I. 1, D.I. 46 in 12-1109), Wright Medical Group, Inc. and Wright Medical Technology, Inc. (collectively "Wright"), (D.I. 1, D.I. 7 in 12-1110), and Smith & Nephew, Inc. ("Smith"), (D.I. 1, D.I. 9 in 12-1111).[1] The court will henceforth refer to Zimmer, ConforMIS, Wright, and Smith as "the Defendants". In each of its complaints, Bonutti alleged that the Defendants had infringed from one to all of six related patents directed to knee implants. *Id.* The six patents are U.S. Patent Nos. 6,702,821 ("'821 patent"); 7,806,896 ("'896 patent"); 8,133,229 ("'3229 patent"); 7,837,736 ("'736 patent"); 7,959,635 ("'635 patent"); and 7,749,229 ("'9229 patent"). Bonutti asserts all six patents against Zimmer, the '896 patent against ConforMIS, and the '821, '896, and '3229 patents against Wright. (D.I. 36 at 4.)[2]

Currently, four out of six of the patents are the subjects of *inter partes* review ("IPR") petitions before the U.S. Patent and Trademark Office ("PTO"). Two of the IPR petitions have been granted and the rest are pending. In particular, the '896 patent is the subject of three separate IPR petitions filed by Smith, Zimmer, and Wright. (D.I. 36 at 6-7.) Smith filed a petition on independent claims 1 and 13, Zimmer filed a petition on independent claim 40, and Wright filed a petition on independent claims 1, 13, 25, and 40. (D.I. 36 at 7; D.I. 29 at ¶ 6 in 12-1111.) The parties also filed petitions regarding some dependent claims of the '896 patent. On February 28,

---

[1] Although Bonutti filed the complaints in September 2012, it did not serve the complaints on any of the Defendants until January 4, 2013. (D.I. 5 in 12-1107, 12-1109, 12-1110, and 12-1111.)

[2] Bonutti initially asserted the '821, '896, '3229, and '9229 patents against Smith. On January 3, 2014, however, Bonutti and Smith stipulated to a dismissal without prejudice of Bonutti's claims against Smith. (D.I. 51 and 52 in 12-1111.)

2

2014, the PTO granted Smith's petition for review of claim 1 of the '896 patent and denied Smith's petition for review of claim 13. (D.I. 42 at 1 and D.I. 43 at 1 in 12-1107.) The '736 patent is the subject of an IPR petition that Zimmer filed regarding independent claims 15 and 31, as well as certain dependent claims. (D.I. 36 at 7.) The '635 patent is the subject of an IPR petition filed by Zimmer regarding independent claims 1 and 30, as well as some of its dependent claims. (*Id.*) The '9229 patent was the subject of an IPR petition filed by Smith regarding independent claim 23. (D.I. 29 at ¶ 6 in 12-1111.) On February 26, 2014, the PTO granted Smith's IPR petition as to claim 23 of the '9229 patent. (D.I. 42 at 1 and D.I. 43 at 2 in 12-1107.)

Presently before the court is the Defendants' Joint Motion to Stay Litigation Pending *Inter Partes* Review ("Motion to Stay"). (D.I. 35 in 12-1107; D.I. 42 in 12-1109; and D.I. 33 in 12-1110.[3]) For the reasons that follow, the court will grant the Defendants' Motion to Stay

## II. BACKGROUND

Bonutti is the owner, through assignment of the six patents-in-suit: the '821 patent, titled "Instrumentation for Minimally Invasive Joint Replacement and Methods for Using the Same"; the '896 patent, titled "Knee Arthroplasty Method"; the '3229 patent, titled "Knee Arthroplasty Method"; the '736 patent, titled "Minimally Invasive Surgical Systems and Methods"; the '635 patent, titled "Limited Incision Total Joint Replacement Methods"; and the '9229 patent, titled "Knee Arthroplasty Method". (D.I. 10 at 2-3.) The patents are directed to, among other things, specialized procedures, instruments, implants, and systems for performing minimally invasive knee surgery. (D.I. 1 and D.I. 10 in 12-1107; D.I. 1 and D.I. 46 in 12-1109; D.I. 1 and D.I. 7 in

---

[3] For ease of reference, the court will henceforth cite to the copies of the Defendants' Motion to Stay, Bonutti's Opposition, the Defendants' Reply, and associated declarations that have been filed in 12-1107, except where unavailable in 12-1107. Thus, where the case number is not specified in a citation, the docket index number refers to 12-1107.

12-1110; D.I. 1 and D.I. 9 in 12-1111.) Bonutti alleges that each of the Defendants designs, offers for sale, and distributes, among other actions taken, knee implants and surgical instruments used in knee surgery in a way that infringes from one to all of the six patents. (*Id.*)

### III. LEGAL STANDARD

As part of the court's "inherent power to conserve judicial resources by controlling its own docket", the court may exercise its discretion to stay a pending litigation. *Cost Bros., Inc. v. Travelers Indem. Co.*, 760 F.2d 58, 60 (3d Cir. 1985). It is well established that the court's authority to stay litigation extends to patent cases in which the PTO has been asked to conduct a reexamination of a patent. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.").

To determine whether staying a case is appropriate, the court balances the following three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and [a] trial date has been set." *Bayer Intellectual Prop. GmbH v. Warner Chilcott Co.*, No. 12-1032-GMS, 2013 U.S. Dist. LEXIS 172735, at *3-4 (D. Del. Dec. 9, 2013) (quoting *First Am. Title Ins. Co. v. MacLaren LLC*, No. 10-363-GMS, 2012 U.S. Dist. LEXIS 31508, at *4 (D. Del. Mar. 9, 2012)).

### IV. DISCUSSION

#### A. Undue Prejudice

Staying a case pending *inter partes* review can result in some prejudice to the plaintiff by virtue of prolonging the dispute. *See Textron Innovations, Inc. v. Toro Co.*, No. 05-486-GMS, 2007 WL 7772169, at *2 (D. Del. Apr. 25, 2007). Potential delay does not in itself establish undue prejudice to the non-movant, however. *See, e.g., BodyMedia, Inc. v. Basis Sci., Inc.*, No. 12-CV-

4

133 (GMS), 2013 U.S. Dist. LEXIS 82830, at * 4 (D. Del. Jun. 6, 2013) ("With regard to the 'undue prejudice' consideration, the court notes that the potential for litigation delay is not, by itself, dispositive and does not demonstrate that a party will be unduly prejudiced.") In order to best gauge whether granting a stay would cause the non-movant undue prejudice or place it at a tactical disadvantage, the court weighs a variety of subfactors. These include "the timing of the request for reexamination, the timing of the request for stay, the status of the reexamination proceedings, and the relationship of the parties." *Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011).

### 1. Timing of the Request for *Inter Partes* Review and for Stay

In a patent infringement action, the defendant must file an IPR petition relating to any underlying patent no later than one year after the date on which the complaint is served. *See* 35 U.S.C. § 315(b). The more diligent a defendant is in seeking *inter partes* review, the less likely it is that the non-movant will be prejudiced by a stay or that the court will find the defendant's filing of the IPR petition to be a dilatory tactic. *See, e.g., TruePosition, Inc. v. Polaris Wireless, Inc.*, No. 12-646-RGA/MPT, 2013 U.S. Dist. LEXIS 150764, at *18 (D. Del. Oct. 21, 2013), *adopted by* No. 12-646-RGA, 2013 U.S. Dist. LEXIS 160996 (D. Del. Nov. 12, 2013).

Bonutti argues that the Defendants' IPR petitions are dilatory tactics because the Defendants filed the IPR petitions "almost a year after service of the complaints, months after the Court's Rule 16 scheduling conference, and immediately prior to the statutory deadline for filing an IPR petition." (D.I. 39 at 2.) Bonutti also argues that "the IPR petitions filed by Zimmer and Wright are nominal in that they cover an extremely small percentage of the claims in the patents asserted against each party". (*Id.* at 10.) The Defendants deny any dilatory motive, however, and point out that a schedule has not been set in any of these cases and discovery has yet to commence. (D.I. 36 at 18-19.) The Defendants also argue that Bonutti's refusal to specify which of the claims

5

in the "multiple patents with large numbers of claims" contributed to the length of time that elapsed before they filed their IPR petitions. (D.I. 40 at 6-7.)

The court concludes that the Defendants are correct. In the instant cases, each of the Defendants' IPR petitions were timely filed between eight months to exactly a year after Bonutti served its complaints on the Defendants.[4] The last of the petitions were filed by January 2014. (*See* D.I. 35, Exs. M, N, O, and P in 12-1110; D.I. 29, Exs. D and F in 12-1111.) Bonutti does not deny that, as the Defendants contend and the record shows, all of the petitions were filed before the court had set a schedule and before discovery had commenced, and that the teleconferences to date have mostly focused on whether the court should stay these cases. (D.I. 36 at 18-19; D.I. 39 at 10.) Because the IPR petitions were filed before any significant occurrences and proceedings in the instant cases, the court rules that the petitions were filed in a timely fashion. *Compare Ever Win Int'l Corp. v. Radioshack Corp.*, 902 F. Supp. 2d 503, 508-09 (D. Del. 2012) (concluding that the defendant's IPR petition was timely filed because "although Defendant did not make its request for reexamination (and its follow-on request for a stay) immediately after it was served...[i]ts requests were filed at a time when little substantive activity had yet occurred) *and BodyMedia*, 2013 U.S. Dist. LEXIS at *9 (concluding that "the timing of the reexamination and stay requests do not evidence any dilatory motive" because they were filed "before a Scheduling Order was entered and any discovery was conducted") *with TruePosition*, 2013 U.S. Dist. LEXIS 150764 at

---

[4] Bonutti served the complaint on both Zimmer and Smith on January 4, 2013. (D.I. 1 in 12-1107 and 12-1111.) Consistent with the statutory deadline, Zimmer filed each of its IPR petitions by January 4, 2014. (*See* D.I. 35, Ex. M in 12-1110 (indicating that Zimmer filed its IPR regarding the '736 patent on November 22, 2013); Ex. N (indicating that Zimmer filed its IPR regarding the '635 patent on December 31, 2013); Ex. O (indicating that Zimmer filed its IPR regarding the '896 patent on January 3, 2014).) Smith, too, filed each of its IPR petitions by January 4, 2014. (*See* D.I. 29, Ex. D in 12-1111 (indicating that Smith filed its IPR petition regarding the '9229 patent on September 25, 2013); Ex. F (indicating that Smith filed its IPR petition regarding the '896 patent on September 26, 2013).) The '896 patent that was the subject of Wright's IPR petition was asserted against Wright in a first amended complaint that Bonutti served upon Wright on January 15, 2013. Consistent with the statutory deadline, Wright filed its IPR petition on January 15, 2014. (*See* D.I. 35, Ex. P in 12-1110.)

*18 (concluding that that the defendant's filing its IPR petition close to the end of the statutory deadline suggested a dilatory motive where it was "close to the eve of claim construction briefing, and after substantial document discovery was conducted.").

Bonutti's own contribution to the timing of the Defendants' IPR petitions also leads the court to conclude that the Defendants' petitions and stay requests were timely filed. Despite the Defendants' requests for specificity, Bonutti did not clearly state before the IPR deadline which of the hundreds of claims in its multiple patents it intended to assert against the Defendants. (*See, e.g.*, D.I. 10 (stating only "at least one claim" of the patents-in-suit repeatedly); D.I. 28, 10:1-25 and 12:17-13:5 (acknowledging, in response to opposing counsels' assertions, that Bonutti was "not ready to give them a list of claims").) Under the circumstances, the Defendants' use of the year-long period to attempt to determine exactly which claims Bonutti would ultimately assert was reasonable. Additionally, the absence of any events or rulings in the instant action that could be potentially harmful to the Defendants' positions suggests that the Defendants' stay request is not an inappropriate litigation tactic. *See Ever Win Int'l Corp*, 902 F. Supp. 2d at 508-09 (Observing that "it cannot be asserted that the requests were prompted by, for example, a case event that harmed Defendant's litigation position" where the defendant's IPR and stay requests "were filed at a time when little substantive activity had yet occurred in this case.").

## 2. Status of the Reexamination Proceedings

As the court has recognized, "PTO reexaminations typically result in lengthy delays, which can hinder a plaintiff's ability to obtain timely resolution regarding its allegations of patent infringement." *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS-CJB, 2013 U.S. Dist. LEXIS 8044, at *24-25 (D. Del. Jan. 11, 2013). Nonetheless, the mere possibility of a delay in litigation due to a stay pending reexamination is in itself insufficient to establish *undue* prejudice. *See, e.g., Celorio v. On Demand Books, LLC*, No. 12-821-GMS, 2013 U.S. Dist. LEXIS 121449, at *3 (D. Del. Aug.

7

21, 2013) ("[T]he mere possibility of a resulting delay is not dispositive and is insufficient to establish that a party will be 'unduly' prejudiced."); *Neste Oil OYJ v. Dynamic Fuels, LLC*, No. 12-1744-GMS, 2013 U.S. Dist. LEXIS 92416, at *4 (D. Del. Jul. 2, 2013) ("The mere potential for delay, however, is insufficient to establish *undue* prejudice.") (emphasis in original).

Bonutti argues that the early stage of the IPR proceedings means that "BSI will therefore suffer extreme evidentiary prejudice if, three years from now, the parties are just beginning to collect documents and take depositions." (D.I. 39 at 12.) The court finds, however, that Bonutti's fear of stale evidence is mitigated by the obligation to preserve evidence to which all the parties are already subject and will continue to be subject. *See Celorio*, 2013 U.S. Dist. LEXIS at *6 ("While the litigation delay may result in some level of difficulty for [plaintiff], it is offset by...the fact that parties have a duty to preserve evidence from the point when litigation is pending or reasonably foreseeable."). Thus, the court concludes that the early stage of the IPR proceedings does not render a stay unduly prejudicial.

Furthermore, at the time the parties submitted their briefs regarding the motion to stay, the PTO had yet to grant any of the IPR petitions. Since the parties completed briefing, however, the PTO has granted two of the parties' IPR petitions. Specifically, on February 26, 2014, the PTO granted Smith's IPR petition as to claim 23 of the '9229 patent. (D.I. 42 at 1, D.I. 43 at 2 in 12-1107.) Two days later, on February 28, 2014, the PTO granted Smith's petition for review of claim 1 of the '896 patent while denying Smith's petition for review of claim 13. (D.I. 42 at 1, D.I. 43 at 1 in 12-1107.) The timeliness of the PTO's response to these petitions suggests that the PTO is proceeding with all due haste, in compliance with its statutory obligation, and weighs in favor of granting the stay.

### 3. Relationship of the Parties

As a general matter, courts hesitate to grant stays where the parties are direct competitors. *See Vehicle IP, LLC v. Wal-Mart Stores, Inc.*, No. 10-503-SLR, 2010 U.S. Dist. LEXIS 123493, at *2 (D. Del. Nov. 22, 2010). The relationship between the parties is no impediment to a stay, however, where the plaintiff is a non-practicing entity. *See In re Bear Creek Techs.*, MDL No. 12-md-2344, 2013 U.S. Dist. LEXIS 103636, at *18 (D. Del. Jul. 17, 2013) (Explaining that the plaintiff's status as "a non-practicing entity composed solely of the [patent]'s inventor" undermined its prejudice assertions.); *Walker Digital, LLC v. Google, Inc.*, No. 11-309-SLR, 2013 U.S. Dist. LEXIS 52176, at *7 (D. Del. Apr. 11, 2013) (Concluding that "because [the plaintiff] is a non-practicing entity, any prejudice that may result from a stay can be remedied by monetary damages."); *Mission Abstract Data LLC v. Beasley Broad. Grp.*, No. 11-176-LPS, 2011 U.S. Dist. LEXIS 130934, at *12-13 (D. Del. Nov. 14, 2011) (Concluding that the relationship between the parties favored a stay because the plaintiff was "a non-practicing entity, which does not manufacture or sell the products covered by the patents in suit and seeks to collect licensing fees.")

The Defendants argue that the relationship between the parties favors a stay because Bonutti is a non-practicing entity and can be adequately compensated by damages. (D.I. 36 at 18.) Bonutti concedes that it "does not manufacture products or engage in head-to-head competition with Defendants." (D.I. 39 at 12.) Nevertheless, Bonutti argues that a stay would prejudice it because during a stay, the Defendants would "run roughshod over its patent rights and alter the economics of the market for licenses to the technologies covered by its patents." (*Id.*) Despite Bonutti's arguments, its status as a non-practicing entity, rather than a market participant, suggests there is little risk that it will lose sales or goodwill in the market. Thus, the court concludes that this factor favors a stay.

**B. Issue Simplification**

There are many important ways in which granting a stay pending reexamination can simplify the issues in a litigation:

> (1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the reexamination may encourage a settlement without further involvement of the court, (5) the record of the reexamination would probably be entered at trial, reducing the complexity and the length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences and (7) the cost will likely be reduced both for the parties and the court.

*Neste Oil OYJ*, 2013 U.S. Dist. LEXIS at *12 (citations omitted).

The Defendants argue that any amendment or cancellation of challenged claims will streamline claim construction and discovery, and that statistics indicate a high probability that the PTO will indeed cancel or amend these claims. (D.I. 36 at 10-11.) The Defendants also argue that the estoppel to which each of the Defendants will be subject will further simplify the issues in the case should the PTO cancel or amend the challenged claims. *Id.* Furthermore, the Defendants contend, even if the PTO upheld every challenged claim, the court would still benefit from the PTO's expert analysis. *Id.* Bonutti counters that any issue simplification from an IPR proceeding would be minimal because the IPR petitions do not involve all of the issues, claims and patents at issue in the litigation. Additionally, Bonutti alleges that the Defendants are engaged in a "scheme" to avoid the full statutory scope of estoppel to which they absolutely must be subject.[5] (D.I. 39 at 14-17.)

---

[5] Bonutti also argues that the potential value of the PTO's review is "entirely speculative" until "a scheduling order is entered, initial discovery is completed, infringement contentions are produced, and any of the Defendants' requests for IPR joinder are decided". (D.I. 39 at 17-18.) A hint of disingenuousness hangs about this argument. It is contradictory for Bonutti to first argue that the Defendants' IPR petitions have been filed too late in the litigation, as Bonutti did in the hopes of prevailing on the undue prejudice factor, and then now argue that the petitions have been filed too early, in order to get the better of the issue simplification factor. Furthermore, there is little support in the case law for the notion that the litigation must progress well into discovery in order for the utility of the PTO's review to be determined. Indeed, Bonutti cites no case law at all.

Contrary to Bonutti's suggestion, there is no requirement that the issues in the IPR be identical to those in the litigation. *See, e.g., Nexans, Inc. v. Belden, Inc.*, No. 12-1491-SLR-SRF, 2014 U.S. Dist. LEXIS 20116, at *11 (D. Del. Feb. 19, 2014) ("[A] complete overlap of the issues in the litigation and the IPR is not required to establish simplification of the case."), *adopted by* 2014 U.S. Dist. LEXIS 32322 (D. Del., Mar. 12, 2014); *Neste Oil OYJ*, 2013 U.S. Dist. LEXIS at *15 ("Finally, while the court recognizes that this case likely presents certain questions that simply cannot be addressed through *inter partes* review, it notes that the 'issue simplification' factor does not require complete overlap.") Also, as noted above, *see supra* Part IV.A.1., to the degree that there are claims absent from the IPR petitions that Bonutti asserts should be included, this is due in no small part to Bonutti's refusal to specify exactly which claims it intends to assert against the Defendants. The court cannot count Bonutti's lack of disclosure in favor of Bonutti's position. *See SSW Holding Co. v. Schott Gemtron Corp.*, No. 3:12-cv-661-S, 2013 U.S. Dist. LEXIS 118326, at *9-10 (W.D. Ky. Aug. 19, 2013) (Noting that where the plaintiff had not identified the claims it contended were infringed, this strategy was "unhelpful in its opposition to the motion for stay" and it was insufficient "to simply point out that there are 61 claims, only three of which are challenged in the *inter partes* review application.")

Furthermore, Bonutti's argument that all of the Defendants must agree to full statutory estoppel in order for there to be any issue simplification is unconvincing. In the event of a final, non-appealable judgment on the merits of an IPR petition, the scope of the estoppel to which the Defendants are willing to be subject for reexamination proceedings to which they are not parties is as follows:

> [E]ach Defendant shall be estopped...from challenging the validity of such claim, to the extent such claim is asserted in such action, as being (a) anticipated under 35 U.S.C. § 102 on the basis of any prior art reference specifically asserted...and specifically used by the PTAB in a finding of anticipation as to such claim, or (b)

obvious under 35 U.S.C. § 103 on the basis of (i) any prior art reference specifically asserted...to alone render such claim obvious and specifically used by the PTAB in a finding of obviousness as to such claim in view of such reference alone, or ( ii) a combination of two or more prior art references specifically asserted...to render such claim obvious in combination and specifically used by the PTAB in a finding of obviousness....

(D.I. 42-1 at 3-4 in 12-1109.)

As demonstrated by the stipulations that the court attached to its November 15, 2013 order scheduling a teleconference,[6] this court has granted stays where defendants have agreed to be estopped only regarding arguments actually raised and prior art actually asserted. (D.I. 26-1 at 2 in 12-1107 (defendants stipulating that "[s]hould any of the claims...survive the...reexamination without being amended or narrowed, the defendants shall be estopped in these matters from challenging the validity of such claims as being obvious under 35 USC § 103, on the basis of the one or more combinations of prior art asserted by Cisco and used by the PTO in its findings."); D.I. 26-2 at in 12-1107 (defendants stipulating that they "shall not contest the validity of the claims at issue in the pending *inter partes* review of the [patent] on grounds actually raised during that review in this or any subsequent proceedings, but shall be permitted to assert any ground not raised during the *inter partes* review (including any ground that reasonably could have been raised)....")

Ultimately, the court concludes that the issue simplification to be had through PTO review of the claims subject to IPR petitions weighs in favor of a stay.

### C. Stage of Litigation

In considering the stage of litigation, the court asks "whether discovery is complete and whether a trial date has been set." *First Am. Title Ins. Co.*, 2012 U.S. Dist. LEXIS at *13. Staying a case in its early stages advances judicial efficiency and prevents the court and the parties from

---

[6] As the parties are aware, the purpose of the teleconference was to discuss the motion to stay that was pending at that point. The motion to stay was later withdrawn so that the instant motions to stay could be filed.

expending resources on claims that may be rendered invalid. *See SenoRx, Inc.*, 2013 U.S. Dist. LEXIS at *15-16.

As discussed above, *see supra* Part IV.A.1., this litigation is still in its early stages. There is not yet a case scheduling order in place nor has discovery begun nor has a trial date been set. Thus, this factor strongly favors granting a stay. *See Neste Oil OYJ*, 2013 U.S. Dist. LEXIS at *15-16 (Concluding that "[t]his factor weighs strongly in favor of granting a stay, as the present case is in its infancy. There has been no scheduling conference, no trial date has been set, and no discovery has taken place.")

## V. CONCLUSION

For the foregoing reasons, the court concludes that staying this litigation pending the PTO's reexamination of the '896, '736, '635 and '9229 patents will serve the interest of judicial efficiency. The court therefore will grant the Defendants' Joint Motion to Stay Litigation Pending *Inter Partes* Review. (D.I. 35 in 12-1107; D.I. 42 in 12-1109; D.I. 33 in 12-1110.)

Dated: April 7, 2014

_____
CHIEF UNITED STATES DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BONUTTI SKELETAL INNOVATIONS, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 12-cv-1107 (GMS) |
| ZIMMER HOLDINGS, INC. and ZIMMER, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| BONUTTI SKELETAL INNOVATIONS, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 12-cv-1109 (GMS) |
| | ) | |
| CONFORMIS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| BONUTTI SKELETAL INNOVATIONS, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 12-cv-1110 (GMS) |
| WRIGHT MEDICAL GROUP, INC. and WRIGHT MEDICAL TECHNOLOGY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

At Wilmington, this 7th day of April, 2014, consistent with the Memorandum issued this same date, IT IS HEREBY ORDERED THAT:

1. The Defendants' Joint Motion to Stay Litigation Pending *Inter Partes* Review (D.I. 35 in 12-1107; D.I. 42 in 12-1109; and D.I. 33 in 12-1110) is GRANTED;

2. The parties shall submit a status report to the court no later than six months from now and every six months thereafter;

3. The parties shall promptly notify the court when the stay should be lifted; and

4. All pending motions in Civil Action Nos. 12-1107, 12-1109, and 12-1110 are DENIED without prejudice and, where appropriate, the parties are granted leave to renew these motions upon the lifting of the stay.

_____
CHIEF, UNITED STATES DISTRICT COURT